IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 01-30950
Summary Calendar

LORI A. BOURGEOIS,

Plaintiff-Appellant,

versus

PRENTISS PROPERTIES LIMITED, INC., Etc., Et Al.,

Defendants,

UNUM LIFE INSURANCE COMPANY OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court for
the Western District of Louisiana
(USDC No. 99-CV-1705)
_____

January 31, 2002
Before REAVLEY, DAVIS and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Lori Bourgeois appeals the district court's decision upholding

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

UNUM Life Insurance's denial of long term disability benefits. On submission of stipulated facts in lieu of a bench trial, the district court held that UNUM did not abuse its discretion under the plan by denying Bourgeois' claim.[1] For the reasons that follow, we AFFIRM.

## I.      Background

Lori Bourgeois, a former office building manager in Dallas, Texas, suffers from fibromyalgia, a poorly understood condition that can cause severe nonspecific pain throughout the body. Neither the parties' briefs nor the record contains a clear definition of fibromyalgia, but UNUM does not dispute the existence of fibromyalgia or its potential to cause a disability. Other courts have concluded that the condition may be, but is not always, disabling.[2]

The parties agree that July 16, 1997 was Bourgeois' last day of active employment at Prentiss Properties, and was therefore the last day she was covered by the company's long term disability plan. She planned to leave for four to six weeks to recover from depression and pain. She attempted to return to work part-time at Prentiss Properties from October 12, 1997 to November 30, 1997, but ultimately could not continue under

---

[1] The district court's five sentence Ruling and Judgment does not comply with the spirit of Rule 52(a), which requires Findings of Fact and Conclusions of Law. However, the facts are not in dispute and the legal issues briefed by the parties are straightforward. The Court accordingly sees no need to prolong this litigation by vacating and remanding the case to the district court for additional explanation. The Court also notes the absence of a separate order of final judgment as required by Rule 58. However, the parties have waived any objection to this deficiency, and the order of July 26, 2001 is a final appealable order within the meaning of 28 U.S.C. § 1291.

[2] See Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996) (citations omitted).

2

even this reduced schedule.  Bourgeois applied for long term disability benefits from

UNUM a year later, on November 28, 1998.  To substantiate her claim that fibromyalgia

prohibited her from performing the "material and substantial duties" of her job while she

was still covered by the plan, Bourgeois supplied to UNUM the following evidence:

- An Attending Physician's Statement of Disability (APS) by Mary Vernon, a marriage and family counselor who treated Bourgeois for depression from September 13, 1996 through May 20, 1997.  Vernon did not provide an opinion on Bourgeois' capacity to work or provide a disability date.  Her notes did not state that Bourgeois' depression was caused by fibromyalgia.

- The notes and summary of Dr. David Bonnet, a family physician, describing his examinations of Bourgeois from June 30, 1997 through November 17, 1997.  He diagnosed her with fibromyalgia on July 14, 1997 and his notes from that visit reflect that she "may have to go to short-term disability."  Through November her condition would cyclically worsen and then improve.  He noted that Bourgeois was experiencing pain, but did not describe her physical limitations.  On her last visit, his notes reflect that her condition had not substantially improved and had "basically plateaued."

- Two reports prepared by a physical therapist at the Baylor Outpatient center on July 17, 1999 and August 19, 1999, indicating that Bourgeois had been diagnosed with fibromyalgia, was experiencing pain and headaches, and included on her "Problem list" an inability to work.

- An APS by Dr. Samir Salama, a psychiatrist.  In a form dated "1/5/99," he stated, "Patient is unable to work at this time."  He believed she had first become unable to work sometime in July 1997, although he did not provide a more specific date and had first treated her in November 1998.  He also identified fibromyalgia as a "secondary condition" contributing to her depression.

- Notes and an APS by Dr. Jimmy Cole, a clinical psychologist.  He first treated Bourgeois in February 1998, and stated in December 1998, "[patient] is unable to function in a work situation requiring regular attendance."  In his opinion she had chronic depression and pain from fibromyalgia, and had been unable to work since December 1997.

3

- Dr. Ladislas Lazaro, a rheumatologist who began treating Bourgeois in February 1998, wrote UNUM that he believed based on his last visit with her in August 1998, that she could "definitely" work in a capacity falling into a "sedentary to light duty job restriction." He stated he had never recommended disability for the patient, and that "nothing is preventing Ms. Bourgeois from working from a standpoint of musculoskeletal diseases."

- Bourgeois supplied a disability statement she prepared after filing her benefit claim, detailing her symptoms and limitations. The majority of the statement was written in the present tense, and outlined her limitations as she was experiencing them in 1998. The section of the statement dedicated to her difficulties at Prentiss Properties did not specify whether her problems occurred before she ceased full-time employment.

- In a supporting statement, Bourgeois' secretary, Patricia O'Hara, described Bourgeois' gradually declining performance at work. However, O'Hara could not say whether Bourgeois' problems were physical or emotional.

After reviewing the evidence, UNUM denied Bourgeois' claim on May 8, 1999.

## II.    Analysis

When a benefit plan governed by ERISA provides the plan administrator with discretion to decide the applicant's entitlement to benefits, the standard of review in federal court is abuse of discretion.[3] An administrator vested with discretion under the plan abuses its discretion if its decision is arbitrary and capricious.[4] If the benefit plan is administered by a party who has a conflict of interest, "that conflict must be weighed as a

---

[3] Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 295 (5th Cir. 1999) (en banc).

[4] Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 214-15 (5th Cir. 1999).

facto[r] in determining whether there is an abuse of discretion."[5] The Fifth Circuit uses a "sliding scale" approach to weighing the conflict of interest–the greater the potential conflict, the less deference given the administrator's decision.[6] We review the district court's assessment of the benefits determination *de novo*.[7]

UNUM concedes that because it both funded the plan and made benefit decisions, it had the sort of conflict of interest entitling its decision denying benefits to a "modicum less deference" than an independent decision would be.[8] Bourgeois argues that because Prentiss Properties dropped UNUM as its benefit provider after Bourgeois filed for benefits and before UNUM reached a decision on her case, UNUM had the "most severe conflict of interest imaginable." UNUM's potential payout to a thirty-six year old was substantial, and UNUM would not be able to recoup its losses from future Prentiss Properties premiums. UNUM counters that it had already lost money on the Prentiss account, demonstrating its willingness to pay claims fairly and at a loss. Bourgeois has no concrete evidence that UNUM's approach to her claim changed when Prentiss cancelled its UNUM contract.

Assuming without deciding that Bourgeois' "guaranteed loss" theory evidences  an

---

[5] Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (citation and internal quotes omitted).

[6] Vega, 188 F.3d at 297.

[7] Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601 (5th Cir. 1994).

[8] Vega, 188 F.3d at 301.

above average administrator/funder conflict of interest,[9] UNUM's view of the administrative record was still well within reason and not an abuse of discretion. The UNUM claims adjuster had Dr. Bonnet's July 14, 1997 diagnosis of fibromyalgia, Dr. Lazaro's opinion that Bourgeois was not disabled when he saw her in 1998 and that she was not limited by a musculoskeletal disease, Dr. Cole's opinion that Bourgeois had been unable to work only since December 1997, and Dr. Salama's opinion that Bourgeois had been unable to work since an unspecified date in July 1997. Bourgeois did not adduce *any* concrete evidence that as of July 16, 1997, she was unable to perform the substantial and material aspects of her job due to fibromyalgia.[10]

With respect to Bourgeois' complaint that UNUM ignored her own statement and her secretary's, UNUM simply made clear, as it was entitled to, that it would not use those statements as substitutes for a medical opinion regarding her physical limitations and whether fibromyalgia was the cause.[11] In any event, Bourgeois' own disability

---

[9] The Court does not assume that UNUM had "the greatest conflict imaginable" and does not believe that a near *de novo* review is warranted by the conflict situation described by Bourgeois. Bourgeois' position that this Circuit should abandon the abuse of discretion standard where an administrator has any clear conflict of interest is, as Bourgeois recognizes, at odds with Supreme Court and Fifth Circuit precedent.

[10] Cf. Woo v. Deluxe Corp., 144 F.3d 1157, 1161 (8th Cir. 1998) (finding that the plan administrator abused its discretion by ignoring the retrospective opinions of treating physicians that a plaintiff with scleroderma became disabled while still employed).

[11] See Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 333-34 (5th Cir. 2001) (finding that an administrator did not abuse its discretion by according almost no weight to a doctor's conclusory statement of disability, unsupported by medical evidence); Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 382 (6th Cir. 1996) (discussing the importance of medical support for fibromyalgia-related disabilities, given the subjective nature of the symptoms).

statement does not describe whether her difficulties at work occurred during her active employment or subsequent attempt to return to work part-time, and her secretary did not know whether Bourgeois' decline was due to physical or "emotional problems."

Finally, Bourgeois argues that UNUM's denial was based on an erroneous understanding of the magnitude of her responsibilities at Prentiss Properties. Whatever her responsibilities were, there is no evidence in the administrative record that during the period of her active employment, she was unable to perform them because of fibromyalgia. No doctor has ever stated that during the relevant period, fibromyalgia limited her ability to perform *any* of her duties. Nor did any doctor describe the symptoms Bourgeois experienced during her active employment such that one of UNUM's vocational specialists could conclude she was unable to perform the substantial and material functions of her job.

## III.    Conclusion

UNUM's denial of Bourgeois' claim for benefits was supported by the administrative record, and was not an abuse of discretion. The judgment of the district court is AFFIRMED.